IN THE SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA

Civil Division

| | |
|---|---|
| Millers Capital Insurance Company<br>a/s/o Karajoel, LLC<br>3815 TecPort Drive, Suite 200<br>Harrisburg, PA 17111<br><br>     Plaintiff,<br><br>  v.<br><br>Hydrofarm, Inc. d/b/a<br>Hydrofarm East<br>270 Canal Road<br>Fairless Hills, PA 19030<br><br>     Defendant. | Civil Case No. |

## **COMPLAINT**

COMES NOW the Plaintiff, Millers Capital Insurance Company as subrogee of Karajoel, LLC, by and through undersigned counsel and brings this civil action against Defendant Hydrofarm, Inc. d/b/a Hydrofarm East, and for its causes of action states as follows:

1. Plaintiff, Millers Capital Insurance Company a/s/o Karajoel, LLC, is a corporation which issues policies of insurance in Washington, DC with offices at the above stated address.

2. At all times relevant hereto, Karajoel, LLC (hereinafter referred to as "Plaintiff's insured") was the owner of real property located at 1832-1840 Fenwick Street, NE, Washington, DC 20002 (hereinafter referred to as the "premises") and was insured by Plaintiff.

3. Defendant Hydrofarm, Inc. d/b/a Hydrofarm East (hereinafter referred to as "Hydrofarm") is a company incorporated in the Commonwealth of Pennsylvania, with an office

1

located at the above stated address in Pennsylvania, which regularly and systematically conducts business in Washington, DC.

4. At all times relevant hereto, Defendant acted by and through its officers, directors, workers, contractors, employees, predecessors, successors, principals, subsidiaries, divisions, parent companies, sister companies, licensees, licensors, franchisees, franchisors, sales force, and/or other agents and is therefore, liable under the doctrines of successor liability, respondeat superior, vicarious liability and/or agency law.

5. At all times relevant hereto, Defendant was doing business in the District of Columbia.

6. On or about January 5, 2019, Plaintiff insured the real property of its insured under policies of insurance that included coverage for damages sustained as a result of a fire (hereinafter referred to as "the fire") which occurred on January 5, 2019.

7. On or about January 5, 2019, Plaintiff's insured leased space to a tenant at the premises and that tenant utilized the space as a commercial medical marijuana growing facility.

8. On or about January 5, 2019, an ActiveAqua AAPW400 submersible pump (hereinafter referred to as the "product") designed, manufactured, assembled, marketed, distributed, supplied, warranted, and/or sold by Defendant was placed in a mixing tank by Plaintiff's insured's tenant when it failed and overheated, resulting in a fire.

9. Upon information and belief, the subject product was sold, distributed and/or shipped from Defendant's above captioned Pennsylvania address to the subject property shortly before the fire.

10. As a result of said fire, Plaintiff's insured made a claim with Plaintiff and was paid, or will be paid, in an amount in excess of $1,000,000 for the damages sustained.

11. Pursuant to the relevant policy of insurance, the payments made, and the law of the District of Columbia, Plaintiff became subrogated to the claims its insured has against Defendant and any other parties responsible for said damages.

## COUNT I
### *(Strict Liability)*
### PLAINTIFF v. DEFENDANT HYDROFARM, INC., D/B/A HYDROFARM EAST

12. Plaintiff hereby incorporates by reference all facts and allegations in the paragraphs above, as if here restated in their entirety.

13. At all times relevant hereto, Defendant designed, manufactured, assembled, marketed, distributed, supplied, warranted, and/or sold ActiveAqua AAPW400 submersible pumps, including but not limited to the subject product.

14. At all times relevant hereto, Defendant was in the business of designing, manufacturing, assembling, marketing, distributing, supplying, warranting, and/or selling submersible pumps in Washington, DC.

15. At the time the subject product was distributed, sold and/or placed into the stream of commerce by Defendant, it was in a defective condition, unreasonably dangerous to the ultimate user or consumer and/or property including Plaintiff's insured's herein.

16. Defendant owed a duty to all users of their products to engineer the subject product to be reasonably safe and non-defective.

17. Defendant breached this duty by designing, manufacturing, assembling, marketing, distributing, supplying, warranting, and/or selling a defective product.

18. The subject product was at all times relevant hereto in a defective and unreasonably dangerous condition, for reasons that include but are not limited to:

   a. The pump presented an unreasonably dangerous risk that it would cause a fire while in use;

3

b. The materials and the design of the pump were insufficient or inadequate to prevent the pump from causing a fire while in use;

c. The pump failed to incorporate a safer design and/or other guards or devices to minimize the risk of failure;

d. The pump was not properly inspected or tested in order to identify and correct any defective or unreasonably dangerous conditions discovered;

e. The pump failed to warn users and others about the dangers associated with the product;

f. The pump was designed in such a manner that it presented an unnecessary fire hazard risk;

g. The pump failed to have safety measures to prevent a fire during normal and foreseeable use of the product;

h. The pump failed to comply with applicable government and industry statutes, regulations, standards and/or guidelines;

i. The pump failed to incorporate safety features to prevent the pump from overheating and causing a fire;

j. The materials for the pump and its components were not sufficient to withstand overheating;

k. The pump contained manufacturing and/or assembly defects which made it malfunction and fail;

l. The pump was improperly assembled during the manufacturing process;

m. The pump was unsafe for its intended and foreseeable use;

n. The pump failed to include a thermal cut off feature to de-energize at a specific temperature to prevent overheating;

o. The pump failed include a thermal cut off feature that would not fail;

4

    p. The pump failed to include a secondary back-up thermal cut off feature and/or a resettable thermal cut off feature;

    q. The materials and design of the pump created an unreasonably dangerous fire hazard risk; and

    r. The information and/or warnings provided with the pump were inadequate, confusing and defective in that they failed to provide proper instructions and/or warnings regarding the pump, its component parts, the installation and performance.

19. The defect(s) in the subject product proximately caused Plaintiff's damages.

20. At the time of the fire, the pump was in substantially the same condition as it was in at the time it was designed, assembled, manufactured, distributed and/or sold by Defendant.

21. The pump was defective and unreasonably dangerous because, when used in an intended or foreseeable manner, it presented an unknowable and unacceptable danger to the average or ordinary consumer.

22. The pump was defective and unreasonably dangerous because it did not perform as safely as an ordinary consumer would have expected.

23. The pump was defective and unreasonably dangerous because a reasonable person would conclude the probability and seriousness of harm caused by the product outweighs the burden and costs of taking precautions against the harm.

24. By designing, manufacturing, assembling, distributing and/or selling a pump in a defective condition, unreasonably dangerous to the ultimate user or consumer or his property, including Plaintiff's insured's herein, Defendant is strictly liable for the damages sustained by Plaintiff's insured.

25. The fire and Plaintiff's insured's damages were proximately caused by the aforementioned defective and unreasonably dangerous conditions.

26. The pump and/or its component parts malfunctioned as defined by Washington, DC law, that is, there is circumstantial evidence that the product had a defect, and even if the defect cannot be identified, the circumstantial evidence eliminates abnormal use and/or reasonable, secondary causes, and such defects existed at the time the product left the Defendant's control.

WHEREFORE, Plaintiff demands judgment in its favor and against Defendant Hydrofarm, Inc., d/b/a Hydrofarm East in an amount in excess of $1,000,000 plus interest, costs and such other and further relief as this Court deems proper.

## COUNT II
*(In the Alternative - Negligence)*
<u>PLAINTIFF v. DEFENDANT HYDROFARM, INC., D/B/A HYDROFARM EAST</u>

27. Plaintiff hereby incorporates by reference all facts and allegations in the paragraphs above, as if here restated in their entirety.

28. At all times relevant hereto, Defendant had a duty to adopt a reasonably safe design for their product.

29. At all times relevant hereto, Defendant failed to exercise ordinary care, in their actions and omissions.

30. The design of the subject product created an unreasonable danger, as it was dangerous to an extent beyond that which would be contemplated by the ordinary buyer and/or user.

31. The aforesaid fire incident was caused by the negligence, gross negligence, recklessness and carelessness of Defendant, in each of the following ways:

a. Designing, manufacturing, supplying and/or selling a defective and unreasonably dangerous Product;

b. The pump presented an unreasonably dangerous risk that it would cause a fire while in use;

c. The materials and the design of the pump were insufficient or inadequate to prevent the pump from causing a fire while in use;

d. The pump failed to incorporate a safer design and/or other guards or devices to minimize the risk of failure;

e. The pump was not properly inspected or tested in order to identify and correct any defective or unreasonably dangerous conditions discovered;

f. The pump failed to warn users and others about the dangers associated with the product;

g. The pump was designed in such a manner that it presented an unnecessary fire hazard risk;

h. The pump failed to have safety measures to prevent a fire during normal and foreseeable use of the product;

i. The pump failed to comply with applicable government and industry statutes, regulations, standards and/or guidelines;

j. The pump failed to incorporate safety features to prevent the pump from overheating and causing a fire;

k. The materials for the pump and its components were not sufficient to withstand overheating;

l. The pump contained manufacturing and/or assembly defects which made it malfunction and fail;

m. The pump was improperly assembled during the manufacturing process;

n. The pump was unsafe for its intended and foreseeable use;

o. The pump failed to include a thermal cut off feature to de-energize at a specific temperature to prevent overheating;

p. The pump failed include a thermal cut off feature that would not fail;

q. The pump failed to include a secondary back-up thermal cut off feature and/or a resettable thermal cut off feature;

r. The materials and design of the pump created an unreasonably dangerous fire hazard risk;

s. The information and/or warnings provided with the pump were inadequate, confusing and defective in that they failed to provide proper instructions and/or warnings regarding the pump, its component parts, the installation and performance;

t. Res ipsa loquitur; and

u. Being otherwise negligent as discovery may reveal.

32. As a result of Defendant's negligence, gross negligence, recklessness and carelessness, the Product failed and caused a fire, which damaged Plaintiff's insured's property.

WHEREFORE, Plaintiff demands judgment in its favor and against Defendant Hydrofarm, Inc., d/b/a Hydrofarm East in an amount in excess of $1,000,000 plus interest, costs and such other and further relief as this Court deems proper.

**COUNT III**
*(In the Alternative – Breach of Warranty)*
PLAINTIFF v. DEFENDANT HYDROFARM, INC., D/B/A HYDROFARM EAST

33. Plaintiff hereby incorporates by reference all facts and allegations in the paragraphs above, as if here restated in their entirety.

34. Defendant knew or had reason to know of the intended use of the Product and its component parts and impliedly warranted said Product and its component parts were fit for use by a consumer and that the Product was not defective, that it was of merchantable quality, free from defects in design and manufacture, and was fit for use as a submersible pump.

35. The pump designed, manufactured, sold and/or distributed by Defendant was defective and unsafe for its intended use and purpose.

36. Defendant breached the implied warranty of merchantability by selling a pump which was defective and unreasonably dangerous and was reasonably likely to malfunction and cause a fire making the pump not merchantable for its ordinary and intended purpose.

37. As a result of said breach of the implied warranty of merchantability, the pump caused a fire resulting in damages to Plaintiff's insured's property.

38. At the time the sale and/or distribution of the pump, Defendant knew the pump would be used by consumers and that consumers would be relying on Defendant to provide a pump that could be safely operated and not cause a fire.

39. By designing, manufacturing, and/or selling a pump that presented an unreasonably dangerous fire hazard risk, Defendant breached the implied warranty of fitness for a particular purpose and caused the damages alleged herein.

WHEREFORE, Plaintiff demands judgment in its favor and against Defendant Hydrofarm, Inc., d/b/a Hydrofarm East in an amount in excess of $1,000,000 plus interest, costs and such other and further relief as this Court deems proper.

### Jury Demand

Plaintiff demands a jury trial on all issues triable of right to a jury.

Respectfully submitted,

David M. Kopstein (#292995)
KOPSTEIN & ASSOCIATES, LLC
9831 Greenbelt Road, Suite 205
Seabrook, MD 20706
(301) 552-3330

(301) 552-2170 – facsimile
dkopstein@cox.net
*Attorney for Plaintiff, Millers*
*Capital Insurance Company*
*a/s/o Karajoel, LLC*