# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MILLERS CAPITAL INSURANCE, COMPANY a/s/o KARAJOEL, LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>HYDROFARM, INC. d/b/a HYDROFARM EAST,<br><br>    Defendant.<br>………………………………………………<br>HDI GLOBAL SPECIALITY SE a/s/o HOLISTIC REMEDIES, LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>HYDROFARM, LLC d/b/a PARSOURCE LIGHTING SOLUTIONS, et al.,<br><br>    Defendant.<br>………………………………………………....<br>HYDROFARM, INC. d/b/a HYDROFARM EAST,<br><br>    Third-Party Plaintiff,<br><br>    v.<br><br>HOLISTIC REMEDIES, LLC,<br><br>    Third-Party Defendant. | **Civil Action Nos.**<br>**1:21-cv-321 (GMH) (Lead Case);**<br>**1:21-cv-367 (CRC) (Member Case)** |

## MEMORANDUM OPINION AND ORDER

In this consolidated products liability action, two insurance companies allege that a defective submersible pump manufactured and sold by Defendant Hydrofarm, Inc., caused a fire resulting in a loss to their insureds. Hydrofarm then filed a contribution claim alleging that one of those insureds—Holistic Remedies, LLC—mis-operated the pump and therefore should share in any liability imposed on Hydrofarm. To support the third-party complaint alleging that the pump was operated improperly, Hydrofarm relied on and attached excerpts from the depositions transcripts of two individuals who worked at Holistic Remedies at the time of the fire. Holistic Remedies has now moved to dismiss, contending that Hydrofarm has pleaded itself out of its claim because other facts adduced at those depositions foreclose Hydrofarm's theory that Holistic Remedies is liable. For the reasons that follow, Holistic Remedies' motion is denied.[1]

### I.  BACKGROUND

#### A.  Factual and Procedural Background

As noted in the Court's decision granting in part Hydrofarm's motion for leave to file a third-party complaint—familiarity with which is assumed here—this is "a fairly straightforward products liability action." *Millers Capital Ins. Co. v. Hydrofarm, Inc.*, 340 F.R.D. 198, 205 (D.D.C. 2022). Karajoel, LLC, an entity that owns property on Fenwick Street, N.E., in Washington, D.C. ("the Fenwick Street property"), leased that space to Holistic Remedies, which utilized it as a medical marijuana growing facility. *Id.* Holistic Remedies purchased a submersible pump made by Hydrofarm to use at the facility. *Id.* Specifically, according to deposition testimony

---

[1] The relevant docket entries for the purposes of this motion are (1) Hydrofarm's Third-Party Complaint and its attachments, ECF No. 42; (2) Holistic Remedies' motion to dismiss and its attachments, ECF No. 46; (3) Hydrofarm's opposition, ECF No. 48; and (4) Holistic Remedies' reply, ECF No. 49. The page numbers cited herein are those assigned by the Court's CM/ECF system.

provided to the Court,[2] the pump was used in what was known as the "water room" or "watering room," a space containing one large water tank (with a reverse osmosis filter to de-chlorinate the water); the large tank fed five smaller tanks of approximately 100 gallons each, in which nutrients would be mixed before the liquid was sent through attached pipes to various grow rooms in the facility. ECF No. 46-2 at 6–8, 14; ECF No. 46-3 at 8–9. The pump at issue was placed in one of the smaller tanks and was used to keep the water agitated and to help incorporate the nutrients. ECF No. 46-2 at 15, 18; ECF No. 46-3 at 8–9. On January 5, 2019, the pump allegedly malfunctioned, starting a fire that damaged the Fenwick Street property. *Millers Capital*, 340 F.R.D. at 205. Thereafter, Karajoel (the property owner) made a claim with its insurer, Millers Capital Insurance Company ("Millers"), and Holistic Remedies (the lessee) made a claim with its insurer, HDI Global Specialty SE ("HDI"). *Id.* Each of the insurers, as subrogee of its respective insured,[3] then filed a separate action against Hydrofarm[4] in D.C. Superior Court pursuing claims of strict liability, negligence, and breach of warranty. *Id.* Those actions were removed to this

---

[2] This information is provided merely as context to aid the reader in understanding the circumstances of the claims; this recitation does not constitute fact-finding by the Court, which is premature at this stage.

[3] Subrogation is "[t]he substitution of one party for another whose debt the party pays, entitling the paying party to rights, remedies, or securities that would otherwise belong to the debtor." *Subrogation*, Black's Law Dictionary (11th ed. 2019). "An insurance company frequently becomes a subrogee after paying a policy claim, as a result of which it is then in a position to sue a tortfeasor who injured the insured," also known as the subrogor. *Subrogee*, Black's Law Dictionary; *see also Subrogor*, Black's Law Dictionary.

[4] To be more specific, Millers sued "Hydrofarm, Inc. d/b/a Hydrofarm East." ECF No. 1-3 at 1–2. HDI sued "Hydrofarm, LLC d/b/a Hydrofarm East" and "Hydrofarm, LLC d/b/a PARsource Lighting Solutions," noting that Hydrofarm, LLC was "formerly Hydrofarm, Inc." Complaint at 1–2, *HDI Global Specialty v. Hydrofarm, LLC*, No. 21-cv-367 (D.D.C. Feb. 10, 2021), ECF No. 1-3. In the notice of removal in the case brought by Millers, Hydrofarm, LLC d/b/a Parsource Lighting Solutions asserts that it was "misnamed in the Complaint as 'Hydrofarm, Inc. d/b/a Hydrofarm East.'" ECF No. 1 at 1. The naming (or misnaming) of the entity known herein as Hydrofarm is not material to the decision in this case.

Court in February 2021 and eventually consolidated, with the Millers action as the lead case and the HDI action as the member case. *Id.*; *see also* ECF No. 13.

Discovery commenced, including the depositions of Parham Attarpour, a former employee of Holistic Remedies who was working at the Fenwick Street property on the day of the fire, and Michael Ian Schultz, who was managing the facility at that time. ECF No. 46-2 at 6; ECF No. 46-3 at 5. In October 2021, Hydrofarm sought leave to file a third-party complaint against Holistic Remedies. The proposed third-party complaint alleged that employees of Holistic Remedies "were wholly or partially responsible for the fire at the Fenwick Street property" and relied on "deposition testimony provided by two Holistic Remedies employees"—Attarpour and Schultz—"suggesting that, contrary to the instructions accompanying the pump, the pump may not have had water running through it shortly before the fire started":

> Specifically, the deposition testimony indicates that [Attarpour] . . . was unsure whether the pump was operating at the time water was being drained from the tank where the pump was placed. . . . [Schultz] testified that it was the company's practice to turn off the pump before the water tanks in which they were placed were totally emptied. Yet, as HDI and Millers allege in their complaints, the pump was not, in fact, turned off, because the pump caused the fire "while [it] was being used in a water tank."

*Millers Capital*, 340 F.R.D. at 206 (citations omitted) (quoting the complaint filed by HDI). The Court granted Hydrofarm's motion in part, allowing it to file a third-party complaint alleging a cause of action for contribution against Holistic Remedies but denying leave to file a claim for indemnity. *Id.* at 229.

Hydrofarm filed its third-party complaint in February 2022. The complaint alleges that the instruction manual for the pump warned against "let[ting] the pump run dry" and provided that "failure to follow instructions and warnings in this manual may result in pump damage and/or

4

serious injury." ECF No. 42 at 2 (quoting the instruction manual). The next paragraph—the one most relevant here—alleges:

> Attarpour testified that the submersible pump was running while the mixing tank was being drained and immediately prior to the fire loss. . . . Schultz, a facilities operations manager for Holistic Remedies, LLC, testified that the submersible pump should not have been running at the time of the loss, because the contents of the mixing tank were being drained and transferred to another vessel. Accordingly, the mixing tank may have been empty while the submersible pump was running, which may be a cause of the fire loss.

ECF No. 42 at 2–3 (citations omitted). Hydrofarm attached three exhibits to its third-party complaint: the instruction manual for the pump at issue, with the warnings noted above, *see* ECF No. 42-1 at 4; excerpts from the deposition transcript of Attarpour, *see* ECF No. 42-2; and excerpts from the deposition of Schultz, *see* ECF No. 42-3.

Holistic Remedies has moved to dismiss the third-party complaint for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. ECF No. 46. It does *not* contend that the third-party complaint as written includes insufficient facts to state a plausible claim for contribution; rather, it argues that further testimony from the depositions of Attarpour and Schultz—testimony not included in the excerpts attached to the third-party complaint but submitted as exhibits to the motion to dismiss—establish that the tank in question could not have been empty at the time the fire ignited and that therefore Hydrofarm's claim for contribution fails "as a matter of law." ECF No. 46-1 at 5–6. Specifically, Holistic Remedies argues that Attarpour's testimony establishes that at 11:30 a.m. on the date of the fire, he "was either filling the water tank at issue and/or beginning to empty the already filled tank" and that the fire began at 12:30 p.m. *Id.* at 5–6. Characterizing Attarpour's further testimony as establishing that the tank held over 100 gallons of water (a statement also made by Schultz) and would have taken between one and two days to drain completely, Holistic Remedies contends that "the entire basis of Hydrofarm's

5

[c]omplaint"—that "Holistic Remedies may have allowed the pump at issue to run in a tank without water in it"—"is a factual impossibility." *Id.* at 6. Holistic Remedies further points to testimony from Attarpour that "he had no knowledge of ever running a pump dry in a tank with no water in it" and from Schultz that "he never observed the pump at issue . . . running without water in the tank." *Id.*

## II.     LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of a complaint on the basis that it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). While the plaintiff need not make "detailed factual allegations" to avoid dismissal, he or she must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 555 (2007). Rather, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). To meet this standard, the plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In addition to the allegations of the complaint, a court evaluating a motion under Rule 12(b)(6) may also consider certain "documents either attached to or incorporated in the complaint[] and matters of which [the court] may take judicial notice." *Vasaturo v. Peterka*, 177 F. Supp. 3d 509, 511 (D.D.C. 2016) (second alteration in original) (quoting *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997)). Generally, a court must accept as true the well-pleaded factual allegations contained in the complaint, *Atherton v. D.C. Office of Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009),

and construe those allegations "in the light most favorable to the plaintiff[ ]," *Vick v. Brennan*, 172 F. Supp. 3d 285, 295 (D.D.C. 2016).

### III. DISCUSSION

As outlined above, the parties' dispute centers on the deposition testimony of Attarpour and Schultz. Hydrofarm argues that, in determining whether it has alleged sufficient facts to support a plausible cause of action for contribution, the Court should consider only the allegations in the third-party complaint and the deposition excerpts it attached thereto. *See* ECF No. 48 at 5–6. Holistic Remedies contends that the Court should deem the full transcripts of both depositions (which are attached to its motion to dismiss) incorporated by reference into the third-party complaint, take that testimony as true, and dismiss the third-party complaint on the basis of that testimony. ECF No. 49 at 3–4. Because engaging in the analysis urged by Holistic Remedies is inappropriate at the motion to dismiss stage, its motion will be denied.

Rule 10(c) of the Federal Rules of Civil Procedure, which governs the form of pleadings, provides that "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c). In *Banneker Ventures, LLC v. Graham*, the D.C. Circuit discussed Rule 10(c) and the doctrine of incorporation by reference. 798 F.3d 1119, 1133–34 (D.C. Cir. 2015). Recognizing that the rule "permits a plaintiff to attach an exhibit to the complaint" so that it becomes part of the pleading, the court noted that "[i]ncorporation by reference can also amplify pleadings where the document is not attached by the plaintiff, but is 'referred to in the complaint and [ ] integral to [the plaintiff's] claim.'" *Id.* at 1133 (second and third alterations in original) (quoting *Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004)). It continued:

> The prototypical incorporation by reference occurs where a complaint claims breach of contract, and either party attaches to its pleading an authentic copy of the

> contract itself. Because the contract is a legally operative document that is a necessary element of the claim, the contract is "integral" to the plaintiff's claim— it "form[s] the basis for a claim or part of a claim." A pleading's reference to even a part of a fully integrated and authentic contract thus incorporates the contract as a whole into the complaint.

*Id.* (alteration in original) (footnote omitted) (citation omitted) (quoting *Carroll v. Yates*, 362 F.3d 984, 986 (7th Cir. 2004)).

At the outset, the Court notes that it is not at all plain that the deposition excerpts can be considered "part of the complaint" under Rule 10(c), which refers only to "written instruments." As a court in the Middle District of Tennessee recently explained, "[c]ourts often reference the familiar maxim that '[d]ocuments attached to the pleadings become part of the pleadings and may be considered on a motion to dismiss.' However, under the Federal Rules of Civil Procedure and relevant authority, the Court must conduct a closer examination of the proposed 'written instrument'" to determine whether it is incorporated under the rule. *Steverson v. Walmart*, No. 3:19-cv-140, 2019 WL 3822179, at *2 (M.D. Tenn. Aug. 15, 2019) (alteration in original) (citation omitted) (first quoting *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335 (6th Cir. 2007), and then quoting Fed. R. Civ. P. 10(c)). The Second and Third Circuits have explicitly held that Rule 10(c) contemplates attachment and incorporation only of "a legal document that defines rights, duties, entitlements, or liabilities, such as a statute, contract, will, promissory note, or share certificate." *Smith v. Hogan*, 794 F.3d 249, 254 (2d Cir. 2015) (quoting *Instrument*, Black's Law Dictionary (10th ed. 2014)); *Rose v. Bartle*, 871 F.2d 331, 339 n.3 (3d Cir. 1989) (similar). The deposition excerpts attached to the third-party complaint do not fit into that category.

To be sure, courts continue to consider documents other than "written instruments" at the motion to dismiss stage if they can properly be characterized as "integral" to the claim, like a

8

document that has "independent legal significance to [a] claim." *Smith*, 794 F.3d at 254–55 (providing, as examples, SEC filings or a prospectus in a securities fraud action or an allegedly anticompetitive agreement in a monopolization action (citing *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47–48 (2d Cir. 1991), and *Int'l Audiotext Network, Inc. v. AT&T Co.*, 62 F.3d 69, 72 (2d Cir. 1995))). But many have rejected the use of "evidentiary support," such as "deposition testimony and notes from witnesses," because "their inclusion at the initial pleading stage procedurally 'blur[s] the distinction between summary judgment and dismissal for failure to state a claim upon which relief could be granted' aspects of litigation." *Copeland v. Aerisyn, LLC*, No. 1:10-cv-78, 2011 WL 2181497, at *2 (E.D. Tenn. June 3, 2011) (alteration in original) (quoting *Rose*, 871 F.2d at 340 n.3)); *see also, e.g.*, *Irizarry v. Abbot Labs.*, No. 18-cv-4232, 2019 WL 5061127, at *1 n.1 (E.D. Pa. Oct. 8, 2019) (refusing to consider "evidentiary material"—an expert affidavit—in ruling on a motion to dismiss); *Murry v. Ocwen Loan Servicing*, No. 16-cv-991, 2017 WL 698801, at *1 n.1 (D. Colo. Feb. 21, 2017) (refusing to consider as part of the complaint documents that "provide unnecessary evidentiary material that is inappropriate at the pleadings stage"); *In re Domestic Airline Travel Antitrust Litig.*, 221 F. Supp. 3d 46, 70–71 (D.D.C. 2016) (finding "the incorporation-by-reference of a document" to be "inapplicable" where the submissions were "not 'integral' to Plaintiffs' claims" in the sense that they did not "form . . . the basis for a claim or part of a claim,'" but rather "were merely cited as the source of certain factual allegations within the Complaint" (ellipses in original) (quoting *Banneker*, 798 F.3d at 1133)); *cf. J.B. Hunt Transp., Inc. v. Liverpool Trucking Co.*, No. 11-cv-1751, 2013 WL

3208586, at *3 n.4 (M.D. Pa. June 24, 2013) (refusing to consider deposition transcripts attached to a proposed amended complaint in deciding whether leave to amend should be granted).

So it is here. Holistic Remedies asks the Court to consider deposition testimony in ruling on a motion to dismiss. That evidentiary material is just that—evidence; it does not have independent legal significance and is not itself "a necessary element of the claim" at issue. *Banneker*, 798 F.3d at 1133. Hydrofarm's reliance on excerpts from the depositions is therefore unlike "[a] pleading's reference to . . . a part of a fully integrated and authentic contract," which would itself "incorporate[ ] the contract as a whole into the complaint." *Id.*; *see also Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998) ("While 'documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are *central* to his claim,' this is a narrow exception aimed at cases interpreting, for example, a contract." (internal citation omitted) (quoting *Wright v. Associated Ins. Cos., Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994))). Nor is there any indication that Hydrofarm intended, by referring to and attaching excerpts from the deposition testimony, to "adopt every word within [the transcripts] as true for the purposes of pleading." *Banneker*, 798 F.3d at 1133 (quoting *N. Ind. Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 455 (7th Cir. 1998)). Rather, the excerpts "seem to have been used by the plaintiffs largely for the purpose of indicating that evidence existed to support the complaint's assertions." *Sahu v. Union Carbide Corp.*, 548 F.3d 59, 68 (2d Cir. 2008). As such, the excerpts and the references are "best viewed" not as vouching for the truth of the entirety Attarpour's and Schultz's deposition testimony, but rather "as tending to establish that the complaint's factual assertions are 'plausible,' and therefore sufficient to survive a motion to dismiss under Rule 12(b)(6)." *Id.* (quoting *Twombly*, 550 U.S at 127); *cf. Jones v City of Cincinnati*, 521 F.3d 555, 561 (6th Cir. 2008) (treating the transcript of an interview attached to

the complaint as an allegation that the statements in the transcripts were made and treating that allegation as true). To use them as Holistic Remedies urges would require the Court to wade into "question[s] of credibility and weight of the evidence that [are] not before a court considering a motion to dismiss." *Jones*, 521 F.3d at 561; *see also, e.g.*, *Rose*, 871 F.2d at 340 n.3 (finding that considering "evidentiary matter" in connection with a motion to dismiss would "blur the distinction between summary judgment and dismissal for failure to state a claim upon which relief could be granted").

In sum, the Court finds that, in these circumstances, it would be inappropriate at this juncture to examine the evidence to which Holistic Remedies points that allegedly undermines the allegations supporting Hydrofarm's contribution claim. As Holistic Remedies does not argue that the third-party complaint, in itself, is deficient, but only that the evidence it offers—which the Court treats as extrinsic—contradicts the allegations in that complaint, its motion is denied.[5]

## CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that Holistic Remedies' Motion to Dismiss Third-Party Plaintiff Hydrofarm's Third-Party Complaint is **DENIED**. It is further

**ORDERED** that Holistic Remedies shall file its Answer to the Third-Party Complaint in compliance with Rule 12(a)(4) of the Federal Rules of Civil Procedure.

Date:  June 1, 2022

_____
G. MICHAEL HARVEY
UNITED STATES MAGISTRATE JUDGE

---

[5] Hydrofarm also contends that nothing in the deposition testimony contradicts or undermines its allegations that "the pump ran dry" because neither deponent testified that the tank in which the pump was placed was full at the time it began draining and because Attarpour's testimony about the amount of time it would take for such a tank to drain was equivocal. ECF No. 48 at 6–7. Because the Court has found that the deposition transcripts are not fair game at this stage of the proceedings, it does not address that argument.